UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:22-CV-00096-GNS-HBB

JASON GREEN PLAINTIFF

v.

KENNY PERKINS et al. DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants' Motion for Summary Judgment (DN 61), Plaintiff's Motion to Stay Proceedings (DN 62), Plaintiff's Motion for Extension of Time (DN 63), and Plaintiff's Motion for Leave to File a Sur-Reply (DN 69). The motions are ripe for adjudication.

## I. STATEMENT OF FACTS AND CLAIMS

The facts of this case were recounted in detail by this Court in *Green v. Perkins*, No. 1:22-CV-00096-GNS-HBB, 2025 WL 1943801, at *1-2 (W.D. Ky. July 15, 2025), and the Sixth Circuit in *Green v. Perkins*, No. 25-5690, 2026 WL 373038, at *1-2 (6th Cir. Feb. 10, 2026), *cert. denied*, No. 26-69, 2026 WL 2976962 (U.S. Oct. 5, 2026). (Mem. Op. Order, DN 54). There have been no new factual developments since those decisions, so only a short factual summary is necessary.

In August 2021, Deputies Kenny Perkins ("Perkins") and Joey Keith ("Keith") responded to a 911 call from Vickie Smith ("Vickie"), Plaintiff Jason Green's ("Green") mother. *Green*, 2025 WL 1943801, at *1. Vickie informed the 911 operator that Green was on drugs; holding a jug of gasoline; and presumably had a lighter on his person, as he was a habitual smoker. *Id.* Upon learning that the police were on their way, Green attempted to leave but was prevented from doing

so by Vickie. *Id.* Perkins and Keith arrived shortly after, at which point Green poured gasoline on himself and was subsequently tased. *Id.* Green then erupted in flames and was taken to the University of Louisville Hospital. *Id.* at *1-2. It is disputed whether Green was holding a lighter when he was tased, but a lighter was never recovered from the scene. *Id.* at *1.

Green was charged and indicted by a grand jury for wanton endangerment in the first degree, public intoxication, and being a persistent felony offender. *Id.* at *2. Perkins and Keith both testified at various hearings that Green had a lighter at the time of the incident and was about to kill his mother before they deployed their tasers. *Id.* At trial, Green was granted a directed verdict on the public intoxication charge, and a jury acquitted him of the charge for wanton endangerment. *Id.* Following his acquittal, Green asserted several causes of action. *Id.* Several were dismissed by this Court's first summary judgment order, and still more were dismissed on appeal, including every remaining federal law claim. *Id.* at *14; *Green*, 2026 WL 373038, at *7. All that remains are state law claims for assault and battery, false imprisonment, and malicious prosecution.

## II. <u>DISCUSSION</u>

### A. <u>Leave to File a Sur-reply</u>

Following the denial of his petition for certiorari, Green has requested leave to file a sur-reply to Defendants' reply which was filed in May. (Pl.'s Mot. Leave File Sur-Reply, DN 69). Sur-replies are not expressly permitted by the Federal Rules of Civil Procedure but they "may be allowed in the appropriate circumstances, especially '[w]hen new submissions and/or arguments are included in a reply brief, and a nonmovant's ability to respond to the new evidence has been vitiated.'" *Key v. Shelby Cnty.*, 551 F. App'x 262, 265 (6th Cir. 2014) (quoting *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 481 (6th Cir. 2003) (alteration in original). Sur-replies are, however, "highly

disfavored, as they usually are a strategic effort by the nonmoving party to have the last word on a matter." *Liberty Legal Found. v. Nat'l Democratic Party of the USA, Inc.*, 875 F. Supp. 2d 791, 797 (W.D. Tenn. 2012) (internal quotation marks omitted) (citation omitted). "The Sixth Circuit has held that a district court does not abuse its discretion in denying leave to file a sur-reply where the opposing party's reply did not raise any new legal arguments or introduce new evidence." *Id.* (citing *Modesty v. Shockley*, 434 F. App'x 469, 472 (6th Cir. 2011)).

Green provides two reasons for allowing a sur-reply. First, he argues that the Supreme Court's denial of his writ of certiorari and the Sixth Circuit's subsequent denial of his request for a rehearing, both of which occurred after the reply was filed, "materially change the posture of the pending Motion." (Pl.'s Mot. Leave File Sur-Reply 1). The motion for summary judgment, the response, and the reply were, however, all filed based on the posture of the case as it stood following the Sixth Circuit's opinion dismissing all the federal claims. That decision has at all relevant times been the law in this case and it remains so now. The mere fact that it is now certain that the Sixth Circuit's decision will stand does not materially change the posture of the case.

Green next argues that the reply advances arguments which did not appear in Defendants' opening memorandum. (Pl.'s Mot. Leave File Sur-Reply 2). This argument has no merit. None of the four alleged new arguments advance a new substantive legal theory or develop facts in a way which would require a response. Highlighting the subsequent negative treatment of cases already cited by the parties is not a new argument. Neither is citing a case to suggest how certain alleged inadequacies in a response should be treated. Finally, the reply brief's argument that the federal and Kentucky probable cause inquiries are the same is nothing more than a counterargument to the response, which argues that they are different. (Pl.'s Resp. Defs.' Mot.

Summ. J. 10, DN 65). Because the filing of this sur-reply appears to be "a strategic effort . . . to have the last word," the request is denied. *See Liberty Legal Found.*, 875 F. Supp. 2d at 797.

**B. <u>Declining to exercise residual jurisdiction</u>**

Before analyzing the summary judgment motion, it must first be decided whether to continue exercising jurisdiction over this case. Because all the federal claims have been dismissed, and the parties are not diverse, there is no longer a basis for jurisdiction under 28 U.S.C. §§ 1331 or 1332. Only Green's state law claims remain, over which the Court was exercising supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a). When dismissing the federal claims, the Sixth Circuit stated:

> [W]e will remand the balance of Green's state claims to the district court. Ordinarily, when a plaintiff's federal claims are dismissed prior to trial, any remaining state law claims are dismissed as well. *See, e.g.*, *Burnett v. Griffith*, 33 F.4th 907, 915 (6th Cir. 2022). With that presumption in mind, and because we cannot address the malicious prosecution claim at this juncture, we will leave it to the district court to determine in the first instance whether to continue to exercise supplemental jurisdiction over Green's other state law claims . . . . *See, e.g.*, *Sussman v. Dalton*, 552 F. App'x 488, 493 (6th Cir. 2014). In deciding whether to exercise supplemental jurisdiction, the district court can consider how our analysis of Green's federal claims would bear on the resolution of his state law claims.

*Green*, 2026 WL 373038, at *7. This holding is in line with Supreme Court precedent, which has held that even after all federal claims have been dismissed, the decision to exercise supplemental jurisdiction remains purely discretionary. *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639-40 (2009).

At every stage in the litigation, a court must consider the values of judicial economy, convenience, fairness, and comity to decide whether the continuing exercise of supplemental jurisdiction is appropriate. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). When the federal law claims have dropped out of the lawsuit in its early stages, the balance of these factors most often indicates that the court should decline to exercise supplemental jurisdiction. *Id.*; *see*

*also* 28 U.S.C. § 1367(c)(3). For further consideration, the Sixth Circuit has stated that "[r]esidual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) (internal quotation marks omitted) (citation omitted). Other considerations include the district court's familiarity with the case, the court's time investment, and whether there are summary judgment motions ripe for review. *Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 211 (6th Cir. 2004).

As with any case which has been in federal court for any amount of time, the values of judicial economy and convenience would be best served by retaining jurisdiction. This case has been on the Court's docket for over four years, has gone through one round of summary judgment with another summary judgment motion now ripe for review, and has already been up on interlocutory appeal. Discovery has been completed and this Court is familiar with the case and its issues. All those facts weigh in favor of retaining jurisdiction. *See Taylor v. First of Am. Bank-Wayne*, 973 F.2d 1284, 1288 (6th Cir. 1992) (affirming a decision to retain jurisdiction when the case had been on the court's docket for almost two years, discovery had been completed, and an extensively briefed summary judgment motion was ripe for ruling).

Not all considerations weigh so favorably, however. The fairness factor is, at most, neutral. There is no reason given by the parties for why a state court would be less fair than a federal court, aside from the necessary refiling of motions and documents. A state court would presumably be no less of a convenient forum. Green has stated that he will not be prejudiced by a dismissal of his case and explained that he intends to promptly refile with the Kentucky Circuit Court. (Pl.'s Resp. Defs.' Mot. Summ. J. 9). Furthermore, there has been no attempt at forum manipulation by Green and there is no reason to believe that litigation would be duplicative. The state court can

simply pick up the case where it stands now, once the current pending summary judgment motion is refiled. *See Fox v. Brown Mem'l Home, Inc.*, 761 F. Supp. 2d 718, 724-25 (S.D. Ohio 2011) (holding that a lack of forum manipulation and the ability to resume litigation in state court at the same procedural juncture supported a decision to decline exercise of supplemental jurisdiction, even when the case had been on the docket over a year, discovery was complete, and a summary judgment motion was pending).

Only comity remains for consideration, a factor which this Court has weighed heavily before. *See Hale v. Boyle Cnty.*, No. 3:18-CV-2-GNS-RSE, 2020 WL 5646903, at *16 (W.D. Ky. Sep. 22, 2020), *rev'd in part on other grounds, vacated in part*, 18 F.4th 845 (6th Cir. 2021). "Because comity to State courts is a substantial interest, there is 'a strong presumption against the exercise of supplemental jurisdiction once federal claims have been dismissed.'" *Cleveland Bakers & Teamsters Health & Welfare Fund v. Publicis Health, LLC*, 768 F. Supp. 3d 898, 910 (N.D. Ohio 2025) (quoting *Packard v. Farmers Ins. Co. of Columbus*, 423 F. App'x 580, 584 (6th Cir. 2011)). The comity consideration weighs most heavily towards relinquishing jurisdiction to the state court when the issues of state law are complicated, or state law is unclear or evolving. *Tennessee ex rel. Pierotti v. A Parcel of Real Prop. Municipally Known as 777 N. White Station Rd., Memphis, Tenn.*, 937 F. Supp. 1296, 1306 (W.D. Tenn. 1996); *see also Moon*, 465 F.3d at 728.

The issues of state law in this case involve primarily the construction and application of Kentucky's qualified immunity framework and the elements of Kentucky's malicious prosecution tort, and are more complicated than they may seem. The principal difference between state law and federal law on these issues is the consideration of malice. *See Carter v. Newby*, No. 5:17-CV-130-TBR, 2018 WL 3432126, at *3 (W.D. Ky. July 16, 2018) ("The crucial difference between [a malicious prosecution] action under § 1983 and one under Kentucky common law is that the

former does not require a showing of malice, while the latter does." (citation omitted)); *Rowan Cnty. v. Sloas*, 201 S.W.3d 469, 481 (Ky. 2006) (holding that unlike federal law, Kentucky maintains a subjective component of the qualified immunity analysis which allows qualified immunity to be negated if "the officer or employee willfully or maliciously intended to harm the plaintiff").

While considering a malice factor alone may be simple enough, analysis of these claims is made more difficult by the grand jury testimony which is central to this case. (Pl.'s Resp. Defs.' Mot. Summ. J. 12). Much like federal law, Kentucky common law evidently provides some level of absolute immunity from civil suit for grand jury testimony, even when given by law enforcement officers. *Martin v. O'Daniel*, 507 S.W.3d 1, 5 (Ky. 2016) ("Consistent with *Rehberg* [*v. Paulk*, 566 U.S. 356 (2012)], Kentucky's common law protects grand jury witnesses from civil suits predicated upon their testimony."); *see also Reed v. Isaacs*, 62 S.W.3d 398, 399 (Ky. App. 2000). That absolute immunity, however, does not extend to acts done outside the limited scope of testimony. *Martin*, 507 S.W.3d at 5 ("The protection afforded to the officers by the doctrine of immunity based upon their privileged testimony does not extend to the other activities upon which [a plaintiff's] claim of malicious prosecution is based."). This seems to make proving malice more difficult when immune testimony is involved, and Green has tackled this problem by focusing his argument on the alleged lack of probable cause. (Pl.'s Resp. Defs.' Mot. Summ. J. 12). "[M]alice may be inferred from proof of the absence of probable cause." *Mosier v. McFarland*, 106 S.W.2d 641, 642 (1937) (citations omitted). Kentucky courts have, however, been inconclusive on how far that rule extends. *Contrast id.* ("If malice was to be inferred from want of probable cause alone, then there would be no necessity for having a distinct requirement that malice be proven."), *and Lexington Cab Co. v. Terrell*, 137 S.W.2d 721, 724 (1940) ("If the proof shows the want or absence

of probable cause, then the necessary malice to sustain the action may be inferred from that fact . . . ." (citations omitted)), *and Martin*, 507 S.W.3d at 6 (the burden of proving malice "is an issue of fact to be decided by the jury and may be inferred, or not, from the absence of probable cause." (citing *Mosier*, 106 S.W.2d at 642-43)). A Kentucky court is better suited to decide, in light of Kentucky's immunity rules, whether the allegedly false grand jury testimony, the potential lack of probable cause, or other proffered evidence will satisfy the burden of showing malice for malicious prosecution. Additionally, because Kentucky's qualified immunity framework still allows for consideration of a malicious intent to harm, that analysis is likewise plagued by similar analytical difficulties. *See Rowan Cnty.*, 201 S.W.3d at 481. Because of these state law complexities, the comity consideration weighs against exercising supplemental jurisdiction.

Suffice to say, if the decision was made to retain jurisdiction of the state law claims, this court would be needlessly deciding nuances of Kentucky law. Should a trial ultimately be necessary, the significant interest of comity is best served by a Kentucky judge or jury deciding the liability of county law enforcement officers for Kentucky state law claims. The Court, in its discretion, declines to exercise supplemental jurisdiction over Green's remaining state law claims and makes no decision regarding the merits or outcome of those claims. *See* 28 U.S.C. § 1367(c)(1), (3). The assault and battery, false imprisonment, and malicious prosecution claims are accordingly dismissed, and the motion for summary judgment is denied as moot.

**C. <u>Motion to Stay Proceedings</u>**

In May, Green filed a motion to stay proceedings pending decision on a petition for a writ of certiorari, citing the potential for the law in the case to change significantly should the Supreme Court weigh in. (Pl.'s Mot. Stay Proceedings, DN 62). The Supreme Court has since denied the petition, meaning the Sixth Circuit's opinion will remain in place. *Green v. Perkins*, No. 26-69,

2026 WL 2976962 (U.S. Oct. 5, 2026); (Den. Cert. 1, DN 68). The motion to stay is therefore denied as moot.

### D. Motion for Extension of Time

In the alternative to his motion to stay, Green filed a motion for extension of time to file a response to the motion for summary judgment. (Pl.'s Mot. Extension Time, DN 63). Green has since filed a response and has drafted a sur-reply. Additionally, because this case is dismissed, the motion for extension of time is denied as moot.

## III. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1. Plaintiff's Motion for Leave to File a Sur-Reply (DN 69) is **DENIED**.

2. Defendants' Motion for Summary Judgment (DN 61) is **DENIED AS MOOT**.

3. Plaintiff's Motion to Stay (DN 62) and Plaintiff's Motion for Extension of Time (DN 63) are **DENIED AS MOOT**.

4. Plaintiff's state law claims against Defendants are **DISMISSED WITHOUT PREJUDICE**.

5. The Clerk shall strike this matter from the active docket.

**Greg N. Stivers, Judge**
**United States District Court**
November 16, 2026

cc: counsel of record